UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CLEMON JONES,

                        Petitioner,

                                                        DECISION AND ORDER

        -vs-                                            16-CV-6149

DALE ARTUS,

                        Respondent.
_____


# INTRODUCTION

Pending is petitioner Clemon Jones's ("Jones") *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Jones is currently serving two concurrent prison terms of 15 years to life, following his conviction, upon a jury verdict, and his September 4, 2007, sentencing, as a persistent felony offender, in Monroe County Court of two counts of criminal possession of a forged instrument in the second degree (N.Y. Penal Law § 170.25).

The petition for a writ of habeas corpus is denied, and the Court denies issuance of a certificate of appealability.


# BACKGROUND

## I.    Relevant Factual Background

Jones was charged with 118 counts of criminal possession of a forged instrument in the first degree (N.Y. Penal Law § 170.30) and two counts of criminal possession of a forged instrument in the second degree (N.Y. Penal Law § 170.25). At trial, undercover police officer

Dale Pascoe ("Pascoe") testified that he met with Jones and Lamar Watson, a confidential informant, on July 18, 2006, in Pascoe's car. Pascoe testified that, after negotiating a price, Jones sold him 118 counterfeit bills with a face value of $3,080, for $1,200. Pascoe further testified that on August 19, 2006, he met with Jones to purchase fake identification cards. After initially rejecting the identification cards as unsatisfactory, the two met again on August 21, 2006. At that time, Jones sold Pascoe fake identification cards, including a Florida driver's license and a New York State benefits card. Pascoe wore a body wire during these three encounters, and the prosecution played the audio recordings for the jury.

Jones also testified at the trial and sought to challenge his level of involvement in the July 18, 2006, transaction, and to establish the affirmative defense of entrapment regarding the fake identification transaction. The trial court later instructed the jury on the elements of the entrapment defense and Jones's counsel argued the matter.

The jury was not able to reach a verdict regarding the 118 counts of criminal possession of a forged instrument in the first degree, and a mistrial was declared as to those counts. The jury did, however, convict Jones on the two counts of criminal possession of a forged instrument in the second degree. After a hearing, the trial court sentenced Jones on September 4, 2007, to concurrent terms of imprisonment of 15 years to life as a persistent felony offender ("PFO") (N.Y. Penal Law § 70.10).[1]

## II.  Relevant Procedural Background

### A.  Motion To Set Aside the Sentence

---

[1] Rather than proceed to a retrial on the first 118 counts of the indictment, Jones pleaded guilty to one count of criminal possession of a forged instrument in the first degree. He received a sentence of 3½ to 7 years in prison, to run concurrently with his jury conviction sentence. However, Jones's pending Petition seems to only address issues regarding his jury conviction.

On April 1, 2009, Jones filed a *pro se* motion in Monroe County Court, pursuant to New York Criminal Procedure Law ("CPL") Section 440.20, challenging his sentence as a PFO. (Dkt. # 10-2 at 1-9).[2] Jones argued that two of his prior felony convictions could not be used to enhance his sentence under New York's PFO statute because those crimes did not have equivalent elements to crimes under New York State law. (*Id.* at 3). The trial court denied Jones's request. (*Id.* at 87). The Appellate Division, Fourth Department, of the New York State Supreme Court (the "Appellate Division"), affirmed the trial court's decision. *People v. Jones*, 109 A.D.3d 1108 (4th Dep't 2013). The New York Court of Appeals granted leave to appeal, and affirmed the Appellate Division's decision. *People v. Jones*, 25 N.Y.3d 57, 61 (2015) ("New York's [PFO] statute, by its plain terms, does not require that, in order to classify someone as a [PFO], an out-of-state predicate felony must have a New York counterpart.").

**B.  Direct Appeal of the Judgement of Conviction**

Jones filed both counseled and *pro se* supplemental briefs to the Appellate Division challenging his conviction and sentence. The Appellate Division unanimously affirmed the judgment, for reasons discussed in more detail throughout this Decision and Order. *People v. Jones*, 114 A.D.3d 1239 (4th Dep't 2014), *lv. denied*, 25 N.Y.3d 1166 (2015).

**C.  Jones's Petition**

Jones raises nine principal grounds for relief in his petition: (1) the evidence was not legally sufficient to support the jury verdict; (2) his due process rights were violated because of police misconduct; (3) his conviction was against the weight of the evidence; (4) the trial court abused its discretion by failing to assign new trial counsel; (5) he was denied effective assistance of trial

---

[2] The page numbers referenced in citations to docket entries correspond to the page numbers generated by CM/ECF.

counsel; (6) his due process rights were violated because of prosecutorial misconduct; (7) he was improperly shackled during his PFO hearing; (8) he was improperly determined to qualify as a PFO; and (9) his sentence as a PFO was inappropriate. (Dkt. # 1 at 5-14) (the "Petition"). Respondent answered the Petition on September 9, 2016, (Dkt. # 10), which included its memorandum of law in opposition to Jones's Petition, (Dkt. # 10-1) ("Resp. MOL.").[3]

By motion dated September 22, 2016, Jones moved to amend his Petition pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to add a tenth ground for relief—ineffective assistance of appellate counsel—based on the seven reasons described in his state-court *coram nobis* motion, filed on July 26, 2016. (Dkt. Nos. 14; 15). Respondent opposed that motion because Jones's *coram nobis* motion was unexhausted in state court. (Dkt. # 17). By motion papers dated October 19, 2016, Jones then moved to stay his Petition until he exhausted this claim (Dkt. # 18), which Respondent also opposed, (Dkt. # 20).

Prior to this Court deciding Jones's motions to amend and for a stay, Jones exhausted the additional claim and moved to "reinstate" the Petition on June 22, 2017. (Dkt. # 22). By Order dated August 9, 2017, this Court denied Jones's motion to stay as moot, and treated Jones's motion to "reinstate" as "a renewal of the original motion to amend." (Dkt. # 23). The Court then directed Respondent to file a response to Jones's renewed motion to amend, and to respond to the merits of Jones's ineffective-assistance-of-appellate-counsel claim. (*Id.*). On September 11, 2017, Respondent indicated that it "d[id] not oppose petitioner's motion to amend the petition to the extent that he seeks to add the ineffective assistance of appellate counsel claims that he raised in

---

[3] This Court's scheduling order granted Jones thirty days upon receipt of Respondent's answer "to file a written response to the answer and memorandum of law." (Dkt. # 3 at 2). Jones did not file a written response to Respondent's answer and memorandum of law.

the state court in his July 26, 2016 coram nobis motion," and proceeded to respond to the merits of Jones's additional claim. (Dkt. # 24).

Based on the fact that Respondent does not, at this point, oppose Jones's motion to amend, that motion (Dkt. Nos. 14, 15 and 22) is granted. Therefore, the Court will address all of Jones's claims.

## DISCUSSION

### I.   Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim has been adjudicated on the merits in state court, federal habeas corpus relief is available only if the state court proceeding: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (quotations omitted). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court when "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Carmichael v. Chappius*, 848 F.3d 536, 544 (2d Cir. 2017) (alterations omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing

legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams*, 529 U.S. at 413). The question is "not whether the state court was incorrect or erroneous in rejecting [petitioner's claim], but whether it was objectively unreasonable in doing so." *Sellan v. Kuhlan*, 261 F.3d 303, 315 (2d Cir. 2001) (quotations omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "This is 'meant to be' a difficult standard to meet." *Virginia v. LeBlanc*, 582 U.S. __, __, 137 S.Ct. 1726, 1727 (2017) (per curiam) (quoting *Harrington*, 562 U.S. at 102)).

Moreover, under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(l). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## A. <u>Whether the Evidence Was Legally Sufficient To Support the Verdict</u> (Ground One)

Jones first contends that the evidence was not legally sufficient to support the jury verdict convicting him of two counts of criminal possession of a forged instrument in the second degree. (Petition at 5). As support, Jones states that his trial defense counsel, Mr. James Nobles, Esq. ("Nobles"), successfully requested that the trial court read a charge for the affirmative defense of entrapment to the jury. (*Id.*). Jones argues that because his entrapment defense "was demonstrated in its totality, the judgment of conviction should be reversed." (*Id.*). The Appellate Division rejected Jones's legal sufficiency claim, holding that he did not preserve the claim for review. *Jones*, 114 A.D.3d at 1240 (citations omitted). Respondent argues, among other things, that the

Appellate Division's holding constitutes an independent and adequate state-law ground to dismiss this claim. (Resp. MOL at 19-21). The Court agrees with Respondent.

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment,'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), unless the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750. "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone*, 556 U.S. at 465. "This rule applies whether the state law ground is substantive or procedural." *Coleman*, 501 U.S. at 729.

A state-law ground is "independent" when "the last state court to consider the claim rendering a judgment in the case clearly and expressly rested its judgment on a state procedural bar." *Perez v. Lempke*, No. 10-cv-0303, 2011 WL 2746785, *2 (W.D.N.Y. July 13, 2011); *see also Dozier v. McGinnis*, 558 F. Supp. 2d 340, 349 (E.D.N.Y. 2008) ("If a state court's holding contains a plain statement that a claim is procedurally barred based on a state rule, the federal court may not review it even if the state court also rejected the claim on the merits in an alternative holding"). A state-law ground is "adequate" if it is "based on a rule that is 'firmly established and regularly followed by the state in question.'" *Perez*, 2011 WL 2746785 at *2 (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)).

In explicitly holding that Jones failed to preserve his legal sufficiency for appellate review, the Appellate Division rested its judgment on an independent and adequate state-law ground. New York's "preservation rule . . . requires defense counsel to lodge a contemporaneous and specific objection to any alleged legal error in order to preserve the issue for appellate review." *Ali v. Unger*, No. 13-cv-6210, 2014 WL 257270, *4 (W.D.N.Y. Jan. 23, 2014) (citing N.Y. CRIM. PROC. LAW § 470.05(2)). "Codified at [CPL] § 470.05(2), the contemporaneous objection rule 'require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error.'" *Id.* (quoting *Garcia*, 188 F.3d at 78). Moreover, the Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011).

Here, the Appellate Division noted that Jones only made a "general motion for a trial order of dismissal." *Jones*, 114 A.D.3d at 1240. After reviewing the relevant portion of the trial transcript, it is clear that Jones's motion, made at the close of the People's proof (Dkt. # 11-10 at 23-26) and reconsidered by the trial court at the close of all of the evidence (Dkt. # 11-11 at 47-48), did not in any way relate to Jones's entrapment defense. Yet "a general objection would not alert the trial court to the defendant's position," and "New York's appellate courts 'uniformly instruct that to preserve a particular issue for appeal, a defendant must specifically focus on the alleged error.'" *Ali*, 2014 WL 257270 at *4 (quoting *Garvey v. Duncan*, 485 F.3d 709, 714-15 (2d Cir. 2007)). Thus, Jones's general motion for a trial order of dismissal was insufficient to "alert the trial court of [Jones's] position"—that the evidence was not legally sufficient because, in his view, he proved his entrapment defense. *See, e.g.*, *Pringle v. Bradt*, No. 11-cv-6504, 2012 WL

3614184, *7 (W.D.N.Y. Aug. 21, 2012) ("Under these circumstances in which trial counsel moved only for a general trial order of dismissal at the close of the People's case . . . the Court finds that the Appellate Division relied upon a state ground that was both independent of the federal question and adequate to support the judgment when it rejected [p]etitioner's insufficiency of the evidence claim based upon the lack of a specific objection."); *Folkes v. Lee*, No. 10-cv-5416, 2011 WL 2610496, *2 (E.D.N.Y. June 30, 2011) ("It is well settled under New York law that a general objection to the sufficiency of the evidence does not preserve particular theories of inadequacy for appeal."). Therefore, the Appellate Division's holding constitutes an independent and adequate state-law ground sufficient to bar federal habeas review of this claim.

Although not required to do so, even a cursory review of the evidence presented at trial demonstrates that the evidence was certainly sufficient to support the jury verdict. The undercover officer, Pascoe, testified concerning several face-to-face meetings with Jones and described in detail the transactions involved. These meetings were recorded and the prosecution played tapes of the recordings to the jury. Thus, the evidence presented was sufficient. Accordingly, Jones's first ground for relief is dismissed.

## B. <u>Whether Police Misconduct Denied Jones Due Process</u> (Ground Two)

Next, Jones argues that the conduct of undercover police officer Pascoe was so egregious that it deprived him of due process. (Petition at 7). The Appellate Division held that Jones "failed to preserve" this contention. *Jones*, 114 A.D.3d at 1240. Respondent argues that this claim, too, is procedurally barred based on an independent and adequate state-law ground. (Resp. MOL at 24-25). The Court agrees with Respondent.

As discussed above, New York's preservation rules requires a "contemporaneous and specific objection to any alleged legal error," *Ali*, 2014 WL 257270 at *4, and is "firmly established

and regularly followed" by New York courts, *Downs*, 657 F.3d at 104. Here, as pointed out by Respondent (Resp. MOL at 28), Jones asserted no contemporaneous and specific objection during trial that any alleged police misconduct amounted to a due process violation. Under these circumstances, then, the Appellate Division's holding constitutes an independent and adequate state-law ground to preclude federal habeas review.

Furthermore, on the merits of this claim, Jones has failed to identify or establish any legitimate claim of police misconduct. The claim is without merit and, therefore, Jones's due process claim, based on alleged police misconduct, is dismissed.

### C. <u>Whether Jones's Conviction Was Against the Weight of the Evidence</u> (Ground Three)

Similar to his legal sufficiency claim, Jones also contends that the jury "failed to give the evidence the weight it should be accorded," that he proved the elements of his entrapment affirmative defense, and that, as a result, the jury's verdict is "contrary to the weight of the evidence." (Petition at 8). The Appellate Division rejected this claim on the merits, holding that the "evidence presented at trial, which included recorded conversations between defendant and an undercover officer, supported the jury's rejection of the affirmative defense of entrapment." *Jones*, 114 A.D.3d at 1240.

First, the evidence presented was certainly sufficient and it is a question for the jury as to whether it would accept the People's version of the case or Jones's entrapment defense. Second, this claim by Jones does not raise a constitutional violation, but focuses on purely state law. Jones's claim "derives from New York [CPL] Section 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines 'that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence.'" *Garrison v. Rock*, No. 08-cv-6266, 2010 WL 3369602, *3 (W.D.N.Y. Aug. 23, 2010) (quoting N.Y. CRIM.

PROC. LAW § 470.15(5)). Thus, a "'weight of the evidence' argument is a state law claim grounded in the criminal procedure statute[.]" *Id.* (citing *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987)). As a matter of purely state law, then, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Blake v. Martuscello*, No. 10-cv-2570, 2013 WL 3456958, *9 (E.D.N.Y. July 8, 2013) ("It is well settled that a 'weight of the evidence' claim . . . is a state claim based on New York [CPL] § 470.15(5) that is not reviewable in [a] federal habeas proceeding.") (collecting cases).

### D. Whether the Trial Court Improperly Denied Jones's Request for New Counsel (Ground Four)

Jones argues that the trial court erred by denying his request to substitute trial counsel, James Nobles, for new counsel. (Petition at 10). According to Jones, the trial court knew of communication issues between Jones and Nobles and of their disagreement over how to proceed in Jones's case. (*Id.*). The Appellate Division found that the trial court did not abuse its discretion in refusing to assign Jones new counsel. *Jones*, 114 A.D.3d at 1240. Respondent argues that the Appellate Division's decision was "neither contrary to, nor an unreasonable application of, clearly established Supreme Court law." (Resp. MOL at 30-35). The Court agrees with Respondent.

"Although the Sixth Amendment provides a criminal defendant the right to the assistance of counsel . . . this right 'does not guarantee a meaningful relationship between the defendant and his counsel." *Haith v. Walsh*, No. 08-cv-6753, 2009 WL 2433747, *5 (S.D.N.Y. July 30, 2009) (quoting *United States v. John Doe # 1*, 272 F.3d 116, 122 (2d Cir. 2001)). "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988); *see also Caplin & Drysdale v. United States*,

491 U.S. 617, 624 (1989) ("The [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").

In order to warrant a substitution of counsel during trial, the "defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972). "When the trial judge receives a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction, but if the proffered reasons are insubstantial and the defendant receives competent representation from counsel, the court's failure to inquire further constitutes harmless error." *Carpenter v. Conway*, No. 07-cv-3602, 2011 WL 795860, *5 (E.D.N.Y. Feb. 25, 2011) (citations and quotations omitted).

Nobles made the first motion for new counsel at Jones's request—that would have resulted in Jones's third court-appointed counsel—at a May 10, 2007, hearing. (Dkt. # 11-14 at 22-25). Nobles stated, "Apparently [Jones] doesn't have faith in my abilities to carry this forward towards the next trial." (*Id.* at 22). Jones, himself, explained that "there was some tapes that [he] wanted to be presented at the trial which wasn't presented at the trial and [he] had asked [Nobles] to return those to [his] family and any transcripts or any grand jury minutes," which had apparently not been returned. (*Id.* at 23). Based on this, it is clear that the concerns raised by Jones related to evidentiary issues that arose during trial, i.e., strategic decisions. Yet "complaints regarding strategic decisions such as whether to file certain motions, pursue certain evidentiary leads, object to the introduction of certain evidence at trial, and call certain witnesses, do not give rise to a conflict of interest, or otherwise warrant habeas relief." *Carpenter*, 2011 WL 795860 at *6. Under

these circumstances, then, the trial court's denial of Jones's request for new counsel is no basis for federal habeas relief.

Nor is federal habeas relief warranted based on the trial court's denial of Jones's renewed application for new counsel at the June 15, 2007, hearing prior to Jones's PFO hearing. Nobles indicated that Jones was withholding certain "documentation and other things that could be useful to [Jones's] potential defense [at the PFO hearing] that [Jones had] been unwilling to share with [Nobles] or give [Nobles] information about." (Dkt. # 11-14 at 38). The trial court asked Nobles whether he could still vigorously represent Jones, noting that Nobles had already "conducted a trial . . . filed a number of motions . . . kn[ew] the law and [was] able to act appropriately on [Jones's] behalf." (*Id.*). Nobles responded that he felt he could "continue to represent [Jones] ethically and with all vigor, one hundred percent." (*Id.* at 38-39). The trial court took the issue "under advisement," but told Nobles, "[u]nless you hear otherwise from the Court, I would ask you to continue to represent Mr. Jones as you have, vigorously." (*Id.* at 40).

The Appellate Division held that the record "establishe[d] that the [trial] court made the requisite minimal inquiry into [Jones's] reasons for requesting new counsel and [Jones] did not establish a serious complaint concerning [Nobles's] representation and thus did not suggest a serious possibility of good cause for substitution of counsel." *Jones*, 114 A.D.3d at 1240 (citations and quotations omitted). It stated further that the trial court had previously granted Jones's first request for new counsel, and that Jones's "problems with [Nobles] resulted from strategic disagreements and from an antagonistic attitude on [Jones's] part, neither of which require[d] substitution of counsel." *Id.* (alterations and quotations omitted).

Based on this Court's review of the record, the Appellate Division's holding was neither contrary to, nor an unreasonable application of, federal law. This is so especially because Jones's

second motion was apparently based on his own decision not to share certain information with Nobles. Thus, this claim is dismissed.

**E.  <u>Whether Jones Was Denied Effective Assistance of Trial Counsel</u> (Ground Five)**

Jones also claims that he was denied effective assistance of trial counsel for two reasons. (Dkt. # 1 at 12).  First, Jones argues that he and Nobles experienced communication issues that "paralyzed the defense."  (*Id.*).  As support for this claim, Jones points to the fact that Nobles "acknowledged having many differences of opinion with [Jones] regarding defense strategy," and that Nobles disagreed with Jones on whether to admit certain evidence because Nobles "felt [the evidence] was inadmissible or detrimental to the defense."  (*Id.*).  Second, Jones argues that Nobles's representation "was compromised by a conflict of interest."  (*Id.*).  In this regard, Jones claims that Nobles, in an unrelated case, also represented a co-defendant of Leslie Blair, one of the confidential informants in Jones's case.  According to Jones, because of that representation, Blair would not testify on Jones's behalf.  (*Id.*).

The Appellate Division rejected this claim on the merits, holding that "[t]he record d[id] not support [Jones's] contention . . . that communication issues hindered the defense[,]" and that Jones failed to demonstrate that the "potential conflict of interest . . . operated upon [Jones's] defense in any way."  *Jones*, 114 A.D.3d at 1240-41 (quotations omitted).  Respondent argues, among other things, that both of Jones's arguments lack merit.  (Resp. MOL at 39-42).  The Court agrees with Respondent.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been difficult."  *Strickland v. Washington*, 466 U.S.

668, 688, 694 (1984). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). Moreover, "decisions which fall squarely within the ambit of trial strategy . . . if reasonably made, will not constitute a basis for an ineffective assistance claim." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).

Here, as Jones acknowledges in his Petition, any alleged communication issues or differences of opinion with Nobles related to "defense strategy." Thus, this issue provides no basis for habeas relief. *See Jamison v. Bradt*, No. 09-cv-747, 2011 WL 2728394, *8 (W.D.N.Y. July 12, 2011) ("It is well-settled that mere disagreement with strategic matters does not support a claim for constitutionally ineffective assistance.").

Furthermore, Jones has not demonstrated that, but for Nobles's potential conflict of interest, there is a reasonable probability the result of his trial would have been different. Nobles disclosed the potential conflict to the trial court prior to the start of the trial. (Dkt. # 11-5 at 54-55). By that point, Nobles had already spoken with Blair's counsel, who indicated that Blair would not cooperate or testify on behalf of Jones. (*Id.* at 55). In addition, prior to Jones presenting his proof at trial, Nobles represented that he had again spoken with Blair's counsel, who indicated that if Jones called Blair to testify, Blair would assert the Fifth Amendment. (Dkt. # 11-10 at 33-34). Given Nobles's representations, then, it was not unreasonable for the Appellate Division to conclude that Jones failed to demonstrate Nobles's potential conflict of interest "operated upon [Jones's] defense in any way." *Jones*, 114 A.D.3d at 1241.

The Court also agrees with Respondent that Nobles's overall efforts on behalf of Jones were effective. Nobles was an active, engaged attorney throughout the case. For example,

Nobles's efforts during trial were such that the jury was deadlocked on 118 counts of criminal possession of a forged instrument in the first degree. Despite the People's evidence being strong, Nobles was engaged on Jones's behalf at the trial, during Jones's PFO hearing, and Jones's sentencing. Thus, the Appellate Division's holding concerning this claim was neither contrary to nor an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts. Therefore, this claim is dismissed.

### F. <u>Whether Prosecutorial Misconduct Denied Jones Due Process</u> (Ground Six)

Jones argues that two of the prosecutor's comments during summation deprived him of a fair trial and due process. (Petition at 13). First, referring to one of Jones's prior convictions, the prosecutor stated that Jones was "driving around with a revoked license, maybe drunk." (Dkt. # 11-12 at 36). In Jones's view, this statement was speculative, improper, prejudicial, and "vilified" him. Second, regarding Jones's own testimony at trial, the prosecutor stated, "you heard [Jones] go into excruciating detail about the insurance and as far as identity theft and how to acquire fake documents." (Dkt. # 11-12 at 48-49). Defense counsel objected to this statement, but was overruled. (*Id.* at 49). Jones argues this statement confused the jury because he was not charged with identity theft, and it caused prejudice.

The Appellate Division held that the first statement was unpreserved for appellate review because Jones "did not object to that remark at trial." *Jones*, 114 A.D.3d at 1241. Regarding the second statement, the Appellate Division concluded that "any improprieties were not so pervasive or egregious as to deprive defendant of a fair trial." *Id.* (alterations and quotations omitted). Respondent argues that review of the first statement is procedurally barred, and that the second statement provides no basis for relief. (Resp. MOL at 42-46). The Court agrees.

The Appellate Division's reliance on New York's preservation rule in denying review of the prosecutor's first comment constitutes an independent and adequate state-law ground to support its judgment. Thus, that part of Jones's claim is dismissed. *See Perez*, 2011 WL 2746785 at *6 ("Courts in this circuit have consistently held that a state court's reliance on defendant's failure to object contemporaneously to a prosecutor's allegedly improper summation constitutes an adequate and independent state ground for deciding the claim.").

Regarding the second comment, the standard of review for a habeas claim of prosecutorial misconduct is whether the prosecutor engaged in "'egregious misconduct . . . amount[ing] to a denial of constitutional due process.'" *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48 (1974)). To succeed, the petitioner "must establish that the prosecutor's remarks were so prejudicial that they rendered the trial 'fundamentally unfair.'" *Sweney v. Dep't of Corrs. (Groveland Corr. Facility)*, No. 09-cv-0119, 2011 WL 1376766, *7 (W.D.N.Y. April 11, 2011) (quoting *Floyd*, 907 F.2d at 353). That is, the prosecutor's remarks must have caused "substantial prejudice" to petitioner, such that they had "a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994)). "In deciding whether a defendant has suffered actual prejudice as a result of the prosecutorial misconduct, [the Second Circuit] ha[s] considered the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (quotations omitted).

Here, the prosecutor's isolated statement regarding Jones's "identity theft" was not so egregious as to violate due process. First, the Court agrees with Respondent that the prosecutor's comment about identity theft was, at least, "fair" based on the evidence. (Resp. MOL at 45).

Second, although defense counsel's objection to the comment was overruled, the trial court took immediate measures to cure any possible misconduct by reminding the jury after ruling on the objection that "[t]he comments of counsel are, again, not evidence. You'll decide what the evidence was." (Dkt. # 11-12 at 49). Finally, Jones has not demonstrated how this isolated comment detracted from the other evidence adduced at trial, such that the certainty of Jones's conviction absent the prosecutor's comment was put into question.

In short, the prosecutor's second comment was not so prejudicial that it rendered the trial as a whole fundamentally unfair. Thus, Jones has not shown that the Appellate Division unreasonably applied federal law regarding that comment, and the claim, therefore, is dismissed.

### G. Whether Jones Was Improperly Shackled During His PFO Hearing (Ground Seven)

Jones further argues that he was improperly shackled during his PFO hearing. (Petition at 13). Because, in his view, the restraints were not justified by an essential state interest, the trial court violated his due process rights. The Appellate Division held that Jones "correctly concede[d] [that he] failed to preserve" this claim for appellate review. *Jones*, 114 A.D.3d at 1241. As a result, Respondent argues that the claim is procedurally barred. (Resp. MOL at 49-50). The Court agrees with Respondent.

"The relevant part of the contemporaneous objection rule for our purposes provides that . . . New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." *Downs*, 657 F.3d at 103. Here, the relevant exchange between Jones and the trial court occurred *at the end* of the PFO hearing. (Dkt. # 11-18 at 31-33). Jones, not his counsel, asked the trial court, "I like to know why do I have to wear these chains and stuff on my legs and feets and stuff like that? . . . It just don't feel right that I am being tied up like this and haven't done anything

wrong to the point." (*Id.* at 32).  The trial court responded that it was the Sheriff's Department, not the trial court, that ordered Jones to be shackled: "I haven't ordered you to be held like this, and that's something that you can address before the next trial on the remaining charges.  But the fact that you are handcuffed in court today is not anything that will change my determination in this case one bit.  I won't consider it." (*Id.* at 33).

Whether Jones was shackled at the sentencing hearing is no basis for habeas corpus relief. This is not a case where a defendant was restrained or shackled in front of a jury.  Rather, it was a sentencing proceeding after the jury verdict.  Moreover, after reviewing the transcript of the PFO hearing, it is clear that Jones and his counsel each made numerous objections throughout the hearing, and yet none related to Jones's physical presentation in the courtroom.  Certainly, neither Jones nor his counsel objected to the shackles because they deprived Jones of his right to due process—the basis for this claim.  Instead, Jones only asked the trial court why he needed to be shackled and did so after the trial court conducted the hearing, which prevented the trial court from being able to promptly take any corrective action.  Given the lack of a contemporaneous, specific, and timely objection to his shackling at the PFO hearing, and the Appellate Division's clear and express reliance on New York's preservation rule, Jones's claim is procedurally barred based on an independent and adequate state-law ground.  Accordingly, the claim is dismissed.

### H.  <u>Whether Jones Was Improperly Determined To Qualify as a PFO</u> (Ground Eight)

Jones also argues that the trial court improperly qualified him as a PFO.  (Petition at 14). Jones claims, "neither crime that was used by the People to determine[] that [he] was a [PFO] was actually a New York State felony, and thus could not serve as an underlying felony supporting such status." (*Id.*).  The Appellate Division stated that it "considered and rejected" this claim on Jones's "appeal from an order denying his CPL article 440 motion to vacate the sentence imposed

upon the underlying judgment of conviction." *Jones*, 114 A.D.3d at 1241 (citing *Jones*, 109 A.D.3d at 1108, *aff'd*, *Jones*, 25 N.Y.3d 57). Respondent argues that this claim is not cognizable on federal habeas review, (Resp. MOL at 49-51), and the Court agrees.

The Second Circuit has held that "[w]hether a New York court erred in applying a New York recidivist sentencing enhancement statute is a question of New York State law," and "'[i]t is well-established that '[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Saracina v. Artus*, 452 Fed. Appx. 44, 46 (2d Cir. 2011) (summary order) (quoting *Estelle*, 502 U.S. at 67-68). Thus, "whether a foreign conviction can serve to enhance a New York State sentence is a question of state law not cognizable on federal habeas review." *Id.* (citing *United States ex rel. Dennis v. Murphy*, 265 F.2d 57, 58 (2d Cir. 1959) (per curiam) ("The use of a Canadian conviction in the application of the state multiple offender law is one of state procedure and presents no federal question.")).

Thus, Jones's claim is not cognizable on federal habeas review, and is dismissed.

### I. <u>Whether Jones's PFO Sentence Was Inappropriate</u> (Ground Nine)

Similarly, Jones argues that his sentence as a PFO was not appropriate. (Petition at 14). Respondent argues, among other things, that the claim is not cognizable on federal habeas review (Resp. MOL at 51-53), and the Court agrees.

"No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Hoover v. Senkowski*, No. 00-cv-2662, 2003 WL 21313726, *10 (E.D.N.Y. May 24, 2003) ("[I]t is well settled that where the petitioner's sentence falls within the range prescribed by state law, an excessive sentence claim is not cognizable on habeas review.").

As Respondent details in its brief (Resp. MOL at 52-53), Jones's sentence of two concurrent prison terms of fifteen years to life was within the range prescribed by New York's PFO statute. *See, e.g.*, *Smith v. Capra*, No. 13-cv-2104, 2013 WL 6501693, *11 (S.D.N.Y. Dec. 11, 2013) (rejecting petitioner's excessive sentence claim; "[t]he [PFO] adjudication made petitioner eligible for a maximum sentence of an indeterminate term of twenty five years to life imprisonment. . . . Petitioner's indeterminate sentence of fifteen years to life imprisonment is thus below the statutory maximum and within the legally permitted range"); *Perez*, 2011 WL 2746785 at *7 ("Petitioner, having been adjudicated as a [PFO], was required to be sentenced to an indeterminate life term, with the minimum sentence ranging from fifteen to twenty-five years. Since [p]etitioner received the minimum sentence authorized by law for [PFO's], his claim that his sentence was harsh and excessive does not present a federal constitutional issue amendable to habeas review."). Accordingly, this claim is dismissed.

## J. <u>Whether Jones Was Denied Effective Assistance of Appellate Counsel</u> (Ground Ten)

Finally, Jones asserts of host of claims he believes his appellate counsel erred by failing to raise on appeal. (Dkt. # 15 at 7-44). Specifically, Jones argues that his appellate counsel was ineffective for failing to raise arguments relating to: (1) Nobles taking a position adverse to Jones's pre-trial *pro se* motions to suppress evidence and dismiss the indictment; (2) the People's failure to comply with their *Brady* disclosure obligations; (3) the trial court denying Jones's request for a *Wade* hearing; (4) the trial court changing its *Sandoval* ruling and allowing Jones to be cross-examined about prior crimes; (5) Nobles allowing cross-examination about Jones's prior crimes; (6) the trial court's judicial bias and misconduct at the time of sentencing; and (7) Nobles failing to challenge that constitutionality of New York's PFO statute. Respondent argues that all of these claims lack merit (Dkt. # 24), and the Court agrees.

The *Strickland* standard also applies to claims for ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). "A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful." *Smith v. Goord*, 412 F. Supp. 2d 248, 255 (W.D.N.Y. 2006).

At the outset, it is noteworthy that appellate counsel raised nine appellate issues on direct appeal in a comprehensive brief spanning nearly 70 pages (Dkt. # 10-11 at 43-115). Appellate counsel also filed a reply brief (Dkt. # 10-14 at 60-82), and petitioned the New York Court of Appeals for leave to appeal the Appellate Division's decision (*id.* at 145-152, 156-159, 163-172). The additional issues Jones raised in his *coram nobis* motion suggest that appellate counsel was constitutionally deficient because he failed to raise every possible issue on appeal. Yet appellate counsel is "not required to argue every non-frivolous issue; rather, the better strategy may be to focus on a few more promising issues so as not to dilute the stronger arguments with a multitude of claims." *King v. Greiner*, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)). Furthermore, the "habeas court should not second-guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues." *Smith*, 412 F. Supp. 2d at 255. "[I]nadequate performance is established only if counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *King*, 210 F. Supp. 2d at 182.

Here, after reviewing Jones's *coram nobis* motion, none of Jones's arguments is grounds for federal habeas relief under the *Strickland* standard. It is not at all evident, nor has Jones established, that appellate counsel omitted "significant and obvious" appellate issues while

choosing to pursue nine other issues that were "clearly and significantly weaker."  Moreover, the Court is not willing to say that appellate counsel's performance on behalf of Jones was objectively unreasonable or that it caused Jones to suffer prejudice of a constitutional magnitude.  In short, the Court will not "second-guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues" he chose to pursue.  *Smith*, 412 F. Supp. 2d at 255.  Therefore, this claim is dismissed.

*     *     *

In addition to these nine principal arguments, which Jones's appellate counsel briefed at the state-court level, it appears that Jones also states ten additional grounds for habeas relief that he raised *pro se* before the Appellate Division.  (Petition at 15-20).  The Appellate Division dismissed the claims in short order.  *Jones*, 114 A.D.3d at 1242 ("We have reviewed [Jones's] remaining contentions in his pro se supplemental brief . . . and conclude that none warrants reversal or modification.").  After review, the Court finds Jones's remaining claims either duplicative of grounds discussed and dismissed above, raise issues of purely state law, or fail to demonstrate that he was denied a federal constitutional right.  Jones's remaining claims, then, are dismissed.

**CONCLUSION**

For all of the reasons stated above, there is no basis to grant the Petition for habeas corpus relief. Therefore, the Petition for a writ of habeas corpus (Dkt. # 1), is **DENIED**. The Court also denies issuance of a certificate of appealability because Jones has failed to make a substantial showing of the denial of any constitutional right.

IT IS SO ORDERED**.**


Dated:      May 14, 2018
              Rochester, New York

                      DAVID G. LARIMER
                      United States District Judge